# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
)
v. ) ID. No. 1807009539
)
)
RASHAD GOODMAN )

Submitted: March 3, 2023
Decided: May 15, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Rashad Goodman's Motion for Postconviction Relief*,
**DENIED**.

Natalie S. Woloshin, Esquire, WOLOSHIN, LYNCH, & ASSOCIATES, P.A., Wilmington, Delaware, for Mr. Goodman.

Dominic Carrera, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State.

**WALLACE, J.**

Rashad Goodman is currently serving a prison sentence that is comprised, in part, of a 10-year term of mandatory incarceration arising from a conviction for Possession of a Firearm by a Person Prohibited and related counts.

In his present postconviction relief motion, Mr. Goodman insists the Court must re-sentence him without the 10-year minimum mandatory sentencing enhancement because, in his view, trial counsel wrongly conceded Mr. Goodman was subject to that 10-year minimum. For the reasons below, Mr. Goodman's motion for postconviction relief is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2019, Mr. Goodman was convicted of the following after a bench trial: Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited, and Carrying a Concealed Deadly Weapon.[1] During the sentencing hearing the State argued that because of Mr. Goodman's prior Pennsylvania convictions, he is "subject to a 10-year minimum-mandatory Level 5 incarceration for possession of a firearm by a person prohibited."[2] The State then argued for 15 years of incarceration.[3] Mr. Goodman's trial counsel affirmatively "ask[ed] the Court to impose the minimum mandatory, which is ten years in this

---

[1] *Goodman v. State*, 2020 WL 1061691, at *1 (Del. Mar. 4, 2020).

[2] Def.'s Appendix at A350, *State v. Goodman*, I.D. No. 1807009539 (Del. Super. Ct. Aug. 16, 2021) (D.I. 50) (hereinafter "Def.'s App.").

[3] *Id.*

matter."[4]

The Court then sentenced Mr. Goodman to 31 years at Level V incarceration, suspended after ten years with application of 11 *Del. C.* § 4204(k) thereto (thereby requiring Mr. Goodman serve all ten years at Level V without diminution).[5] The Court noted that an unsuspended ten-year term was the minimum allowed due to the operation of 11 *Del. C.* § 1448(e)(1)(c) and that the § 4204(k) provision was applied as a matter of the Court's discretion.[6]

Mr. Goodman appealed his conviction to the Delaware Supreme Court arguing only that the undersigned, who heard his bench trial, should have recused himself once he had been exposed "to highly prejudicial evidence."[7] The Supreme Court affirmed Mr. Goodman's conviction.[8]

Thereafter, Mr. Goodman docketed a motion for postconviction relief.[9] The Court appointed Mr. Goodman postconviction counsel who then filed an amended motion for postconviction relief.[10] The Court heard arguments on the motion and it

---

[4]  *Id.* at A351.

[5]  *Id.* at A361-62.

[6]  *Id.* at A356-59; *id.* at A361-62; *see also* DEL. CODE ANN. tit. 11, § 1448(e)(1)(c) (2018).

[7]  *Goodman*, 2020 WL 1061691, at *3.

[8]  *Id.* at *3-4.

[9]  D.I. 41.

[10]  D.I. 49.

is now ripe for decision.[11]

## II. THE POSTCONVICTION MOTION

### A. MR. GOODMAN'S MOTION CAN BE CONSIDERED ON ITS MERITS.

Before the Court can consider the substance of any postconviction claim, it must first address Criminal Rule 61's procedural requirements.[12] The procedural bars in Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[13]

Mr. Goodman's postconviction motion is timely because it was filed less than a year after his judgment of conviction became final. This is also Mr. Goodman's first motion for postconviction relief. And because Mr. Goodman's sole claim alleges ineffective assistance of counsel—which generally can't be raised on direct appeal—he is neither procedurally barred from raising it in this collateral proceeding, nor has it been formerly adjudicated.

Accordingly, the Court will address the merits of Mr. Goodman's ineffective-assistance-at-sentencing claim.

---

[11] D.I. 58.

[12] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[13] *State v. Taylor*, 2017 WL 5054262, at *2 (Del. Super. Ct. Oct. 23, 2017). If any of these bars apply, then the inmate must show entitlement to relief under Rule 61(i)(5). *Id.*

## B. Mr. Goodman's Postconviction Claim

Mr. Goodman alleges trial counsel provided ineffective assistance by wrongfully conceding that Mr. Goodman's previous out-of-state convictions enhanced his minimum mandatory sentence to ten years.[14] According to Mr. Goodman, he should be resentenced with the Court's starting point being a lower minimum-mandatory.[15]

## III. APPLICABLE LEGAL STANDARDS

A movant who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[16]

There is a strong presumption that criminal defense counsel's representation was reasonable,[17] and "[i]t is not this Court's function to second-guess reasonable [litigation] tactics" engaged by him.[18] Too, one claiming ineffective assistance

---

[14] Oral Arg. Tr. at 25 (D.I. 58) ("[Trial Counsel] was ineffective because he conceded the 10 years."); *id.* at 14 ("that minimum should not have been argued at 10").

[15] *Id.* at 14. *See, e.g.*, *Jones v. State*, 2021 WL 4098967, at *2 (Del. Sept. 8, 2021) (noting that relief in the form of resentencing may be warranted to correct a court's misimposition of non-suspended imprisonment as a minimum-mandatory term to a sentence when that minimum term did not in fact apply); *State v. Palmer*, 2022 WL 16641898, at *7 (Del. Super. Ct. Sept. 27, 2022) (granting such relief under Rule 35(a)).

[16] *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Alston v. State*, 2015 WL 5297709, at *2-3 (Del. Sept. 4, 2015).

[17] *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[18] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

"must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[19] Lastly, a movant must demonstrate *both* deficient attorney performance and resulting prejudice to succeed on his ineffective assistance of counsel claim.[20] Failure to do so on either will doom that claim and obviate any need for the Court to address the other.

## IV. DISCUSSION

### *MR. GOODMAN'S TRIAL AND APPELLATE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE.*

### A. MR. GOODMAN'S TRIAL AND APPELLATE COUNSEL WERE NOT DEFICIENT.

Mr. Goodman challenges the sentence he received via a claim of ineffective assistance of counsel.[21] At bottom, Mr. Goodman suggests that had his counsel been constitutionally effective, Mr. Goodman would not have been subject to a ten-year minimum mandatory sentence and might instead be serving a reduced sentence.[22] He says that counsel should have challenged the sufficiency of the State's pre-

---

[19] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)).

[20] *Strickland*, 466 U.S. at 694; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant." (citation omitted)); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[21] Am. Mot. for Postconviction Relief at 12 (D.I. 49).

[22] *Id.* at 22-23.

hearing document submission evidencing his out-of-state convictions—convictions that were used to enhance the minimum-mandatory sentence he received.[23] Mr. Goodman further urges the Court to now determine his eligibility for the enhanced sentence by relying solely on the State's memorandum submitted before he was sentenced.[24] But if not, Mr. Goodman maintains he should be given a postconviction hearing. The scope of that hearing, according to him, should be limited to the narrow question of whether the documents supplied by the State, both to counsel pre-hearing and later at the sentencing hearing, were sufficient under *Shepard v. United States* and *Valentine v. State*.[25] In his view of such a

---

[23]   *Id.* at 16.

[24]   Oral Arg. Tr. at 27-28.

[25]   *Id.* ("Then there would need to be a postconviction hearing in which the Court were to determine whether if these documents were presented to the Court whether the Court would find that these met *Shepard* and *Valentine*.").

In *Valentine v. State*, 2019 WL 1178765 (Del. Mar. 12, 2019), the Delaware Supreme Court adopted a requirement imposed by *Shepard v. United States*, 544 U.S. 13 (2005) and its progeny, that out-of-state convictions introduced to enhance sentences under the federal Armed Career Criminal Act ("ACCA") must be proved with certain types of documents. *Shepard*, 544 U.S. at 16. *Valentine* took the *Shepard* document requirement for sentencings under the ACCA and applied it to this State's PFBPP analog. *See Valentine*, 2019 WL 1178765, at *1-2.

Under *Valentine* and *Shepard*, a sentencing court evaluating an out-of-state conviction can only rely on "charging document[s], written plea agreement[s], transcript[s] of plea colloqu[ies], and any explicit factual finding by the trial judge to which the defendant assented," but not "police reports or complaint applications." *Shepard*, 544 U.S. at 16; *see Valentine*, 2019 WL 1178765, at *1-2.

In *Valentine* itself, the defendant had been previously convicted of a gun possession and a separate drug dealing offense in Pennsylvania, each of which's Pennsylvania statutory definition was broader than its comparative Delaware felony. *Valentine*, 2019 WL 1178765, at *1-2. To identify whether the Pennsylvania offenses fit into the § 4201(c) violent felony definition, the sentencing court looked at two documents – the first was the drug dealing jury verdict sheet and the second was the arrest report for the gun possession charge. *Id.* at *2. Because both documents

postconviction hearing, the State would be prohibited from submitting any additional evidence to support its sentencing position that he is, in reality, eligible for sentencing enhancement under 11 *Del. C.* § 1448(e)(1)(c).[26]

Mr. Goodman's procedural suggestion doesn't square with this Court's rules or postconviction procedure. Just as it does for the conviction from which a given sentence derives, Rule 61 provides a limited means to collaterally challenge such a sentence within a narrow framework.[27] And at this stage, it is the inmate-movant who carries the burden of proof and persuasion.[28] Here, Mr. Goodman has asserted ineffective assistance of sentencing counsel so the applicable analysis under

narrowed the scope (*i.e.* elements) of what Valentine was convicted of, the sentencing court found (with the aid of those documents) his Pennsylvania convictions were equivalent to Delaware § 4201(c) violent felonies. *See id.*

On appeal, our Supreme Court found the use of the jury verdict sheet was proper, but the use of the arrest report was not. *Id.* And because our Supreme Court barred consideration of the arrest report, it left open the possibility that Valentine's Pennsylvania gun possession charge was for an act that wouldn't attach § 4201(c)-defined-violent-felony liability in Delaware and thus ordered resentencing. *Id.*

[26] Oral Arg. Tr. at 28.

[27] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990) (Rule 61 "is not designed as a substitute for direct appeal."); *State v. Diggs*, 2022 WL 779569, at *2 (Del. Super. Ct. Mar. 15, 2022) ("Rule 61 does not 'allow defendants unlimited opportunities to relitigate' their convictions." (quoting *Ploof*, 75 A.3d at 820)).

[28] *See Younger v. State*, 580 A.2d 552, 555 (Del. 1990) ("[I]n a postconviction proceeding, the petitioner has the burden of proof and must show that he has been deprived of a substantial constitutional right before he is entitled to any relief." (citation omitted)); *see also Swan v. State*, 248 A.3d 839, 858-59 (Del. 2021) (The Rule 61 movant "carries the burden of establishing (i) that counsel's representation fell below an objective standard of reasonableness and (ii) that the deficiencies in counsel's representation caused him substantial prejudice." (citation omitted)); *Green v. State*, 238 A.3d 160, 174 (Del. 2020) ("The burden of persuasion is on [the postconviction movant] to show that his counsel's performance was objectively unreasonable, *i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer did." (citation omitted)).

*Strickland v. Washington* and its progeny requires he demonstrate both counsel deficiency and resultant prejudice[29]—*i.e.*, in this case whether a sentence enhancement that was not statutorily authorized was applied.

The first inquiry is whether counsel performed deficiently both pre-sentence and at the sentencing hearing when conceding Mr. Goodman was subject to the 10-year minimum mandatory sentence instead of challenging the State thereon.

The record reflects trial counsel reviewed the out-of-state convictions and the relevant case law, including *Shepard* and its progeny; he found the state-provided documents *and other information he reviewed* evidenced that Mr. Goodman was subject to sentencing enhancement under 11 *Del. C.* §1448(e)(1)(c).[30] In turn, counsel made the reasonable decision not to press the State to provide the Court with more information and engage in a full-court press on the issue. To him, that gambit ran the risk of a sentencing hearing where bad facts, not already in the record, would

---

[29] *Strickland,* 466 U.S. at 694; *Ploof*, 75 A.3d at 825 ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant." (citation omitted)); *Hamby*, 2005 WL 914462, at *2.

[30] Trial Counsel's Affidavit at 3 (D.I. 51)

> Furthermore, prior to Mr. Goodman's sentence, trial counsel in reviewing the relevant law in *Shephard v. United States* [sic] formed the legal opinion that the charging documents, including the Pennsylvania criminal complaints, trial dispositions and sentencings order were sufficient 'Shephard' [sic] documentation to satisfy the State's burden of establishing prior felonies pursuant to 11 Del. C. § 1448. Trial counsel had access to and reviewed all documents pertaining to Mr. Goodman's past criminal record prior to his sentencing.

(internal citation omitted).

be presented to the sentencing judge.[31]  And recall, the State was arguing for the statutory maximum.

"[A] lawyer's performance is constitutionally deficient only if no competent attorney would have chosen the challenged course of action."[32]  It is not the role of the Court to determine "what the best lawyers would have done . . . [or] even what most good lawyers would have done."[33]  "Instead, the Court must determine whether . . . 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment.'"[34]  "*Strickland* doesn't deem . . . counsel ineffective for not pursuing the best or most successful strategy; instead, it requires trial[] counsel be informed by a thorough investigation of law and facts."[35]  That is what happened here.  "[D]efense counsel has a general duty to investigate, [but] he need not travel blind alleys in hope they might lead to something

---

[31]  No doubt, any information gleaned from *Shepard* documents can be considered by the sentencing judge for more than just the statutory-enhancement calculus. *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992) ("[A] sentencing court has broad discretion to consider information pertaining to a defendant's personal history and behavior which is not confined exclusively to conduct for which that defendant was convicted." (citations and internal quotation marks omitted)); *Lake v. State*, 1984 WL 997111, at *1 (Del. Oct. 29, 1984) ("The sentencing judge may conduct a broad inquiry which examines almost any factor including prior criminal charges, hearsay, and other information normally in-admissible for the purpose of determining guilt." (citations omitted)).

[32]  *Green*, 238 A.3d at 178 (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)).

[33]  *Id.* (alterations in original) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

[34]  *State v. Peters*, 283 A.3d 668, 686 (Del. Super. Ct. 2022) (alteration in original) (quoting *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014)).

[35]  *Id.* at 687 (citing *Burns v. State*, 76 A.3d 780, 788 (Del. 2013); *Hoskins*, 102 A.3d at 730).

helpful to his client's case."[36] After reviewing the facts available to him—which appears to include more than just the State's proffers—and applicable law, sentencing counsel decided it was best not to challenge the State's document submissions and risk a worse picture of Mr. Goodman's criminal past at his sentencing proceeding where the State was seeking the statutory maximum. That is not counsel deficiency.

### B. MR. GOODMAN HAS NOT SHOWN ANY RESULTANT PREJUDICE FROM HIS ATTORNEYS' ALLEGED DEFICIENT PERFORMANCES.

Even if trial counsel was deficient, which he is not, Mr. Goodman doesn't assert the State couldn't produce sufficient documentation to prove that his out-of-state convictions were equivalent to Delaware violent felonies.[37] Mr. Goodman, instead, says that to succeed on his postconviction claim he need only show the documents provided at the time of the sentencing were insufficient.[38] Not so.

To reiterate, failure to make a deficiency or prejudice showing under the *Strickland* test "will render the claim unsuccessful."[39] And again, if any supposed attorney shortcoming didn't actually prejudice Mr. Goodman, then there is no need

---

[36] *State v. Harrell*, 2017 WL 2418278, at *2 (Del. Super. Ct. June 5, 2017) (citation omitted).

[37] *See* Am. Mot. for Postconviction Relief at 21 ("Absent those documents, the convictions alone leave open the possibility that Mr. Goodman was convicted of the portions of the statutes that do not constitute a violent felony in Delaware.").

[38] Oral Arg. Tr. at 29-30.

[39] *Hamby*, 2005 WL 914462, at *2 (citation omitted).

to examine whether his sentencing attorney did indeed perform deficiently.[40]  The necessary prejudice here must be a reasonable probability that but for counsel's errors the result of his sentencing proceeding (or appeal therefrom) would have been different.[41]  To carry his prejudice burden in these circumstances, Mr. Goodman must prove counsel's *Strickland*-level deficient performance resulted in the application of a specific, demonstrable sentencing enhancement that would not have occurred but for counsel's error.[42]

Even if the Court were to limit itself to the documents the State initially supplied, that would, under Mr. Goodman's theory, only afford him a new sentencing hearing where the State certainly could introduce supplemental documentation.[43]  The ultimate relief, therefore, would not perforce be a different

---

[40]  *Ploof*, 75 A.3d at 825; *Green*, 238 A.3d at 174-75.

[41]  *Harden v. State*, 180 A.3d 1037, 1045 (Del. 2018).

[42]  *Peters*, 283 A.3d at 697 (citation omitted); *see also United States v. Otero*, 502 F.3d 331, 337 (3d Cir. 2007) (finding prejudice prong satisfied "when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing . . . which would not have occurred but for counsel's error" (quoting *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000)).

[43]  At oral argument Mr. Goodman insisted the Delaware Supreme Court's then-pending decision in *Downs v. State* would support his position that if the Court were to hold a hearing on the sufficiency of the State's out-of-state supporting documents, the State would be barred in that hearing from supplementing its submissions either on its own or by order of the Court.  Oral Arg. Tr. at 11-12, 27-28.

When the Supreme Court issued its *Downs* decision, the Court allowed the parties to submit supplemental letters explaining the effect, if any, that decision had here.  D.I. 59.

In his supplemental letter, Mr. Goodman acknowledged the Supreme Court's determination that the Superior Court has inherent powers to manage its affairs but insisted in this case "[a]ny allowance for a modification of the sentencing memorandum after such opportunity to fully

-11-

sentencing outcome. His failure to affirmatively demonstrate he was not

§ 1448(e)(1)(c)-eligible dooms his ability to show the resultant prejudice specific to

this claim.[44]

What's more, the documents already provided by the State satisfy *Valentine*

and *Shepard*. *Shepard*, as applied to Delaware's PFBPP statute through *Valentine*,

instructs that "the charging document" (or "some comparable judicial record of this

information") is needed to credit the out-of-state convictions—as opposed to "police

reports or complaint applications."[45] Mr. Goodman might like to say otherwise, but

---

develop the record may be considered an abuse of discretion." Mr. Goodman's Supp. Ltr. at 2 (D.I. 60). But Mr. Goodman does no more to explain why it would.

In *Downs v. State*, the Supreme Court upheld a trial court's decision to *sua sponte* postpone a sentencing hearing and allow the State to refile its habitual offender motion. 2023 WL 1977572, at *3 (Del. Feb. 14, 2023). The Supreme Court recognized the "Superior Court's . . . inherent power to 'manage its affairs and to achieve the orderly disposition of its business.'" *Id.* (quoting *State v. Harris*, 616 A.2d 288, 291 (Del. 1992)). And found "[t]here is no abuse of discretion when a trial judge gives parties an opportunity to fully develop the record before ruling on an issue's merits." *Id.*

Mr. Goodman asserts that once the State had submitted its sentencing memorandum its hands were tied because it *had* an opportunity to fully develop the record and failed to do so. Mr. Goodman's Supp. Ltr. at 2. Not so. Were the Court to need a hearing on postconviction—where Mr. Goodman shoulders the burden (*see supra* note 28)—the State would be permitted to supplement its earlier- abbreviated sentencing presentation to counter Mr. Goodman's now-minted prejudice claim; that is, to show Mr. Goodman is not due relief because he was, in fact, due the § 1448(e)(1)(c) enhancement.

[44] *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); *Peters*, 283 A.3d at 697 (for this species of ineffectiveness claim, that means misapplication of a specific demonstrable sentencing enhancer).

[45] *Shepard*, 544 U.S. at 16, 26.

-12-

a Pennsylvania "criminal complaint is not merely a police report."[46] It is, in fact, the charging document.[47] And while it may, in some instances, be superseded by an information or indictment, in Mr. Goodman's Pennsylvania prosecution it was *the* charging document.

## V. CONCLUSION

Mr. Goodman has proved neither the deficient performance by counsel[48] nor

---

[46] *Garcia v. Attorney General of the United States*, 462 F.3d 287, 292 (3d Cir. 2006)

> In Pennsylvania, a criminal complaint is not merely a police report. It is the charging instrument, and in this case bears the imprimatur of the district attorney. The filing of a criminal complaint is sufficient to initiate criminal proceedings in the Commonwealth and Pennsylvania law does not require the subsequent filing of either an information or an indictment if a plea of guilty or nolo contendere is entered.

(citing Pa. R. Crim. P. 502 & *Commonwealth v. Mitchell*, 372 A.2d 826, 829 (Pa. 1977)).

[47] *Id.* Not so, challenges Mr. Goodman. But the distinction he struggles to draw (Reply Br. at 10) illustrates a weakness in the *Shepard-Valentine* line. Even when documents are clearly reliable, a sentencing court is instructed to "close [its] eyes to what is obvious" and instead "feign amnesia" depending on the type of document. *See United States v. Chapman*, 866 F.3d 129, 138-39 (3d Cir. 2017) (Jordan, J., concurring). This approach has been met with deserved skepticism and sharp criticism across the federal circuits. *United States v. Scott*, 14 F.4th 190, 200-02 (3d Cir. 2021) (Phipps, J., dissenting) (surveying federal circuits).

[48] Mr. Goodman concludes his postconviction motion by asserting that his appellate counsel was also ineffective. Am. Mot. for Postconviction Relief at 23-24. In order to succeed in demonstrating that his appellate counsel was constitutionally ineffective, Mr. Goodman would, first have to show that his counsel was objectively unreasonable in failing to find and pursue a particular nonfrivolous claim on its merits. *See Neal v. State,* 80 A.3d 935, 946 (Del. 2013) (observing also, however, that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal" (quoting *Smith v. Robbins,* 528 U.S. 259, 288 (2000))). In addition, he must demonstrate that counsel's allegedly deficient performance caused prejudice—"[t]hat is, [Mr. Goodman] must show a reasonable probability that, but for his [appellate] counsel's unreasonable failure to file a [particular claim], he would have prevailed on his appeal." *Id.* at 947 (alteration added) (quoting *Robbins*, 528 U.S. at 285). And again, Mr. Goodman cannot obtain postconviction relief unless he adequately establishes both—objectively unreasonable performance and sufficient resulting prejudice. Given the disposition of the sentencing-enhancement issue here on postconviction, Mr. Goodman can demonstrate neither.

the prejudice required for relief under *Strickland*. Accordingly, Mr. Goodman's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

Original to Prothonotary